# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| STARKEY LABORATORIES, INC., | C.A. No. 0:12-cv-01820-MJD-SER |
| Plaintiff, | Honorable Chief Judge Michael J. Davis |
| v. | |
| | JURY TRIAL DEMANDED |
| ACACIA RESEARCH CORPORATION, ACACIA RESEARCH GROUP, and ADAPTIVE SONICS LLC, | |
| Defendants. | |

## DEFENDANTS ACACIA RESEARCH CORPORATION AND ACACIA RESEARCH GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   STATEMENT OF FACTS ........................................................ 3

III.  ARGUMENT .............................................................................. 5

    A.    The Complaint Against Acacia Corp. And Acacia Group Should Be Dismissed Because There Is No Subject Matter Jurisdiction Pursuant To 12(B)(1). ............................................................ 5

        1.    The Complaint Should Be Dismissed Because There Is No Case Or Controversy And Therefore This Court Lacks Subject Matter Jurisdiction. ........................................ 6

        2.    There Is No Case Or Controversy Because The Acacia Defendants Do Not Own Or Have An Exclusive License In The '701 Patent. ........................................................ 7

        3.    The Parent Company Of A Patent Holder Is Not A Proper Defendant In A Declaratory Judgment Suit. ....................... 8

    B.    The Complaint Against Acacia Corp. And Acacia Group Should Be Dismissed Because It Fails To State A Claim Pursuant To 12(B)(6). .............................................................................. 10

        1.    The Complaint Against The Acacia Defendants Should Be Dismissed Because Starkey Fails To Allege The Elements Of An Alter Ego Claim. ........................................ 11

            (a)    The Complaint Should Be Dismissed Because There Is No Unity Between The Acacia Defendants And Adaptive. ............................................. 12

            (b)    The Complaint Should Be Dismissed Because Starkey Has Not Pled Fraud Or Injustice. ...................... 14

        2.    Even If Starkey Had Adequately Pled Alter Ego, The Complaint Still Would Fail Because The Acacia Defendants Could Not Bring A Patent Infringement Suit Based Upon A "Reverse Piercing" Theory. .............................. 16

IV.   CONCLUSION. ........................................................................... 18

i

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Amoco Chem. Co. v. Texas Tin Corp.*,
925 F. Supp. 1192 (S.D. Tex. 1996)....................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................10, 15

*Beam Laser Sys., v. Cox Commc'ns, Inc.*,
117 F. Supp. 2d 515 (E.D. Va. 2000) ...................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................10

*Boston Scientific Corp. v. Wall Cardiovascular Tech.*,
647 F. Supp. 2d 358 (D. Del. 2009)........................................12, 15, 16

*Capital Parks Inc. v. Se. Ad & Sales Sys., Inc.*,
30 F.3d 627 (5th Cir. 1994) ..............................................................15

*Carey v. Nat'l Oil Corp.*,
592 F.2d 673 (2d Cir. 1979) .............................................................17

*Castleberry v. Branscum*,
721 S.W.2d 270 (Tex. 1986) .......................................................12, 13

*Cognex Corp. v. VData LLC*,
2006 U.S. Dist. LEXIS 81242 (D. Minn. Sept. 13, 2006)..................14

*Disenos Artisticos, E Industriales, S.A. v. Costco Wholesale Corp.*,
97 F.3d 377 (9th Cir. 1996) ..............................................................17

*Dole Foods Co. v. Patrickson*,
538 U.S. 468 (2003)............................................................................9

*Fieldturf Inc. v. Sw. Recreational Indus., Inc.*,
357 F.3d 1266 (Fed. Cir. 2004) ..........................................................8

*Fina Research S.A. v. Bariod Drilling Fluids, Inc.*,
No. 96-1137, 1996 U.S. App. LEXIS 24233 (Fed. Cir. Sept. 16, 1996)..............7

ii

*Fina Research S.A. v. Baroid Ltd.*,
  141 F.3d 1479 (Fed. Cir. 1998) ...........................................................7

*Gadsen v. Home Pres. Co.*,
  No. 18888, 2004 Del. Ch. LEXIS 14 (Del. Ch. Feb. 20, 2004) .........................12

*GMP Tech., LLC v. Zicam, LLC*,
  No. 08-cv-7077, 2009 U.S. Dist. LEXIS 115523 (N.D. Ill. Dec. 9, 2009) ..........9

*In re Great S. Life Ins. Co. Sales Practices Litig.*,
  MDL No. 1214, 1999 U.S. Dist. LEXIS 23100
  (N.D. Tex. Sept. 15, 1999)...............................................................12

*In re Ozark Rest. Equip. Co., Inc.*,
  816 F.2d 1222 (8th Cir. 1987) ...........................................................17

*In re RCS Eng'rd Prods. Co., Inc.*,
  102 F.3d 223 (6th Cir. 1996) ............................................................17

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  529 F.3d 371 (7th Cir. 2008) ............................................................11

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
  8 F.3d 130 (2d Cir. 1993) ...............................................................11

*Mars, Inc. v. Coin Acceptors, Inc.*,
  527 F.3d 1359 (Fed. Cir. 2008) .........................................................7

*Md. Cas. Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941).....................................................................6

*MMI, Inc v. Baja, Inc.*,
  743 F. Supp. 2d 1101 (D. Ariz. 2010) ..................................................14

*Medimmune, Inc. v Genentech, Inc.*,
  549 U.S. 118 (2007).....................................................................6

*Medtronic, Inc. v. Mine Safety Appliances Co.*,
  468 F. Supp. 1132 (D. Minn. 1979)....................................................8, 9

*Merial Ltd. v. Intervet, Inc.*,
  430 F. Supp. 2d 1357 (N.D. Ga. 2006)..................................................9

iii

*Nat'l Bond Fin. Co. v. Gen. Motors Corp.*,
    238 F. Supp. 248 (W.D. Mo. 1964) ...................................................................12

*Nat'l Bond Fin. Co. v. Gen. Motors Corp.*,
    341 F.2d 1022 (8th Cir. 1965) ........................................................................12

*Norfolk S. Ry. Co. v. Trinity Indus. Inc.*,
    No. 3:07-CV-1905, 2008 U.S. Dist. LEXIS 110274
    (N.D. Tex. Sept. 2, 2008) ...........................................................................12, 13

*Papasan v. Allain*,
    478 U.S. 265 (1986) ........................................................................................10

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) ..........................................................................8

*Rolls-Royce Corp. v. Heros, Inc.*,
    576 F. Supp. 2d 765 (N.D. Tex. 2008) ...........................................................14

*Spectronics Corp. v. H.B. Fuller Co.*,
    940 F.2d 631 (Fed. Cir. 1991) ..........................................................................6

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
    620 F.3d 1305 (Fed. Cir. 2010) .....................................................................8, 9

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ..........................................................17

*United States v. Martin*,
    337 F.2d 171 (8th Cir. 1964) ...........................................................................12

*United States v. Best Foods*,
    524 U.S. 51 (1998) ..........................................................................................13

## STATUTES AND RULES

28 U.S.C. § 2201(a) ...........................................................................................6

Fed. R. Civ. P. 12(b) ......................................................................................5, 10

## TREATISES

Restatement (Second) of Conflict of Laws § 307 (1971) ........................................11

iv

## I.    INTRODUCTION

This patent infringement dispute began on January 13, 2012 when Adaptive Sonics LLC ("Adaptive"), the owner of United States Patent No. 5,473,701 ("the '701 Patent") filed suit against Starkey Laboratories, Inc. ("Starkey" or "Plaintiff") in the United States District Court for the Eastern District of Texas ("the Texas Action").  Noticeably absent from the Texas Action are Acacia Research Corporation ("Acacia Corp.") and Acacia Research Group ("Acacia Group," collectively "the Acacia Defendants").

Starkey filed a motion to transfer the Texas Action to Minnesota.  With that motion still pending, and almost seven months after the filing of the Texas Action, Starkey filed a second suit in this Court for declaratory judgment of non-infringement and invalidity of the '701 Patent against Adaptive *and* against the Acacia Defendants ("the Minnesota Action").  There is no apparent reason for the Acacia Defendants to be joined in the Minnesota Action, except perhaps to support an argument that the Texas Action should be transferred to Minnesota because the Minnesota Action includes additional parties.

However, the Acacia Defendants are not proper defendants in the Minnesota Action (or the Texas Action) for the simple reason that they do not have any ownership interest in or exclusive license to use the '701 Patent.  The law is clear: Only the owner of a patent or its exclusive licensee has standing to bring an action

1

for infringement of that patent.  For that same reason, only the owner of a patent or its exclusive licensee is an appropriate defendant in an action seeking a declaratory judgment of non-infringement with respect to that patent.  Therefore, the Acacia Defendants are not proper defendants in the Minnesota Action.

Starkey attempts to avoid this well-established legal doctrine by alleging that the Acacia Defendants are alter egos of Adaptive.  However, Starkey fails to allege facts that could support either element of the alter ego doctrine, neither a unity of interest or a fraud or injustice.  Even if Starkey had adequately pled the elements of alter ego (which is has not), the Acacia Defendants still would not be proper defendants.  Courts repeatedly have held that a parent cannot bring a suit for patent infringement because it is the alter ego of its patent-holding subsidiary (*i.e.*, a theory of reverse piercing of the corporate veil).  Since the Acacia Defendants could not affirmatively bring a patent infringement suit even if they were the alter egos of Adaptive, the Acacia Defendants also cannot be defendants in a declaratory judgment action.

The Acacia Defendants are only included in the Minnesota Action to support an argument to move this seven-month old dispute to Minnesota.  However, there is no legal basis for the claims against the Acacia Defendants.  Therefore, the Acacia Defendants respectfully request that this Court grant their motion to dismiss under Rule 12(b)(1) or, alternatively, under Rule 12(b)(6).

## II.    STATEMENT OF FACTS

On January 13, 2012, Adaptive filed suit against Starkey in the Texas Action for infringement of the '701 patent.  (Docket Entry "DE" 1, Ex. D.)  No other plaintiffs were named in the Texas Action, nor did Starkey seek to join any parties in the Texas Action.  (*See id.*)  On April 2, 2012, Starkey filed a motion to transfer the Texas Action to the District of Minnesota.  (DE 1., Ex. F.)  That motion is still pending.

On July 25, 2012, almost seven months later, Starkey filed suit in the Minnesota Action against Adaptive, Acacia Corp. and Acacia Group.  (DE 1.)  In its complaint, Starkey seeks a declaratory judgment of non-infringement and invalidity of the '701 patent.  (DE 1 at ¶¶ 39-46.)

The '701 patent at issue in this litigation issued on December 5, 1995 and is entitled "Adaptive microphone array."  (DE 1, Ex. A.)  The '701 patent claims a method and an apparatus for enhancing a microphone array to reduce sensitivity to background noise.  (DE 1, Ex. A, col. 1 lines 42-45.)  The complaint filed in the Minnesota Action states that Adaptive is the "owner of all right, title, and interest in and to the '701 patent."  (DE 1 ¶ 9.)  The complaint does not allege that Acacia Corp. or Acacia Group own or have any ownership interest in the '701 patent.  (DE 1, *passim.*)  The complaint also does not detail any fraud or injustice that would

3

occur should Acacia Corp. and/or Acacia Group not be found to be the alter egos of Adaptive.  (*Id.*)

Adaptive is a wholly owned subsidiary of Acacia Group.  (DE 1 ¶ 5.) Starkey alleges that Adaptive acts as a mere instrumentality or alter ego of both Defendants Acacia Group and Acacia Corp.  (DE 1 ¶ 8.)  The complaint also alleges that Acacia Corp. and Acacia Group, as the parent companies to Adaptive, are "driving the accusations of infringement and are in control of Defendant Adaptive Sonics for purposes of this litigation."  (DE 1 ¶ 24.)  Starkey further alleges that the three companies are indistinguishable.  (*Id.*).

In the complaint, Starkey alleges that Adaptive is wholly owned by Acacia Group and that they share the same office address in Texas.  (DE 1 ¶ 25.)  Starkey then alleges that Acacia Group shares an office with Acacia Corp. in California. (DE 1 ¶ 26.)  The complaint alleges that Adaptive's employees are also involved in the management of Acacia Group and/or Acacia Corp.  (DE 1 ¶ 28.)  Starkey further alleges that some officers of Adaptive are officers and leaders of Acacia Group and/or Acacia Corp.  (DE 1 ¶ 29.)  Starkey provides four examples.  First, Starkey alleges that Adaptive's CEO, Dooyong Lee, is also the CEO of Acacia Group and the Executive Vice President of Acacia Corp.  (DE 1 ¶ 29.)  Second, Starkey alleges that an officer of Adaptive, Marvin Key, is also a Senior Vice President of both Acacia Group and Acacia Corp.  (DE 1 ¶ 29.)  Third, Starkey

4

alleges that another officer of Adaptive, Tisha Stender, is also a Senior Vice President of Acacia Group. (DE 1 ¶ 29.) Lastly, Starkey alleges that Cheryl Willeford, the person who filed the certificate of formation for Adaptive, is also a committee member for Acacia Corp.'s Board of Directors. (DE 1 ¶ 29.)

Finally, Starkey alleges that Acacia Corp. speaks for Acacia Group and Adaptive in press releases and on its website. (DE 1 ¶ 31.) As an example, Starkey cites a press release wherein Acacia Corp. states that its subsidiary entered into a settlement agreement with manufacturers of hearing aids. (DE 1, Ex. L.) The complaint also alleges that discussions between the parties after the Texas Action was filed involved Adaptive representatives who also either manage, direct or are employed by Acacia Group and/or Acacia Corp. (DE 1 ¶ 34.)

## III.    ARGUMENT

### A.    The Complaint Against Acacia Corp. And Acacia Group Should Be Dismissed Because There Is No Subject Matter Jurisdiction Pursuant To 12(B)(1).

A complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Here, Starkey alleges that subject matter jurisdiction exists under the Declaratory Judgment Act and that there is an actual controversy between Plaintiff Starkey and Defendants Acacia Corp. and Acacia Group. (DE 1 ¶ 6.) However, as will be explained more fully below, there can be no case and

controversy with entities that do not own the patent in suit or hold an exclusive

license to use the patent in suit.

> **1.    The Complaint Should Be Dismissed Because There Is No Case Or Controversy And Therefore This Court Lacks Subject Matter Jurisdiction.**

Starkey seeks a declaratory judgment of non-infringement and invalidity of

the '701 patent.  The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

In determining whether subject matter jurisdiction is proper, "[t]he question

. . . is whether the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment."

*Medimmune, Inc. v Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas.*

*Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The party seeking

declaratory judgment has the burden of establishing an actual case or controversy.

*See, e.g., Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991)

("The long established rule of law is that a declaratory judgment plaintiff must

establish an actual controversy. . . .").

Here, as will be discussed below, Starkey has not met its burden of establishing an actual case or controversy because the Acacia Defendants do not own or have an exclusive license to use the patent in suit and therefore there can be no case or controversy.

>    **2.    There Is No Case Or Controversy Because The Acacia Defendants Do Not Own Or Have An Exclusive License In The '701 Patent.**

If a party cannot bring suit for patent infringement because they have no legal interest in the patent in suit, there is no case or controversy that would support jurisdiction under the Declaratory Judgment Act.  *See, e.g., Fina Research S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998).  "Only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit. . . ."  *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008).

In *Fina Research S.A. v. Baroid Drilling Fluids, Inc., ("FINA I")*, No. 96-1137, 1996 U.S. App. LEXIS 24233 (Fed. Cir. Sept. 16, 1996), the Federal Circuit affirmed the dismissal of a declaratory judgment suit against a defendant who did not have any legal interest in the two patents in suit.  *Id.* at *6-7.  The Federal Circuit reasoned that the defendant could not sue on the patents and that therefore "it is clear that there is no 'case of actual controversy.'"  *Id.*  Indeed, it is well-settled that in order to have standing in a patent infringement suit, a party must be

the owner or exclusive licensee of the patent in suit.  *See, e.g., Spine Solutions, Inc.*

*v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010);

*Fieldturf Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir.

2004); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551-52 (Fed. Cir.

1995) (stating that a party must generally hold legal title to the patent or obtain all

substantial rights in the patent through assignment or license in order to have

standing to sue for patent infringement).

Here, neither Acacia Corp. nor Acacia Group have any legal interest in

the '701 patent.  Plaintiff's complaint in the Minnesota Action admits that

Adaptive is the "owner of all right, title, and interest in and to the '701 patent."

(DE 1 ¶ 9.)  The complaint is silent on the Acacia Defendants' ownership interest

in the '701 patent.  (DE 1, *passim*.)  This is because the Acacia Defendants have no

ownership interest in the patent in suit, per Plaintiff's admission that Adaptive

holds all rights in that patent.  Therefore, as in *Fina I*, the Acacia Defendants'

motion to dismiss should be granted.

### 3. The Parent Company Of A Patent Holder Is Not A Proper Defendant In A Declaratory Judgment Suit.

To the extent that Starkey argues that jurisdiction exists over the Acacia

Defendants because they "own" Adaptive, that argument too should fail.  A parent

corporation does not own the assets of its subsidiary simply by virtue of that

LITIOC/2052468v5/101022-0059

relationship. *See, e.g., Dole Foods Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003).

For example, in *Spine Solutions* the Federal Circuit held that it was improper to allow a parent corporation who was not an owner or exclusive licensee of the patent-in-suit to be added as a co-plaintiff. *Spine Solutions, Inc.*, 620 F.3d at 1317-18. As in this case, in *Spine Solutions* there was no allegation that the parent corporation was an exclusive licensee of the patent in suit and no allegations that the parent even licensed the patent. *Id*.[1]

Similarly, in a District of Minnesota case, *Medtronic, Inc. v. Mine Safety Appliances Co*., 468 F. Supp. 1132, 1134 (D. Minn. 1979), the plaintiff filed a declaratory judgment suit against a subsidiary who was the sole owner of the patent in suit. *Id*. The plaintiff also filed suit against the parent company who had no ownership interest in the patent. *Id*. The court in *Medtronic* granted the

---

[1] Other district courts across the country have similarly found that a parent company that does not own the patent-in-suit does not have standing to sue for patent infringement. *See, e.g., Merial Ltd. v. Intervet, Inc*., 430 F. Supp. 2d 1357, 1361-63 (N.D. Ga. 2006) (granting motion to dismiss parent corporation's infringement suit; finding that "standing under the Patent Act cannot be based on the mere fact that Merial SAS is a wholly-owned subsidiary of Merial."); *Beam Laser Sys., v. Cox Commc'ns, Inc*., 117 F. Supp. 2d 515, 520-21 (E.D. Va. 2000) (granting motion to dismiss sole shareholder's infringement suit; finding that "[o]wnership of corporate stock does not create equitable title in that corporation's property"); *GMP Tech., LLC v. Zicam, LLC*, No. 08-cv-7077, 2009 U.S. Dist LEXIS 115523, at *5-6 (N.D. Ill. Dec. 9, 2009) (dismissing declaratory relief against parent company where the parent company did not own or have an exclusive license for the patents).

9

parent's motion to dismiss and noted that it disposed of this motion with "relative ease." *Id*. at 1148. In reaching its decision, the court noted that plaintiffs do not dispute that the subsidiary owned the patent in suit and that the parent did not own or have a license to the patent in suit. *Id*. Similarly, Starkey's complaint is silent on the Acacia Defendants' ownership interest in the '701 patent and in fact admits that Adaptive owns all interest in the '701 patent. (DE 1 ¶ 9.)

As shown above, case law is clear that a parent company that does not own the patent in suit should be dismissed for lack of subject matter jurisdiction. Accordingly, the Acacia Defendants' 12(b)(1) motion should be granted.

**B.    The Complaint Against Acacia Corp. And Acacia Group Should Be Dismissed Because It Fails To State A Claim Pursuant To 12(B)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion to dismiss, a court accepts all factual allegations in the complaint as true. However, the complaint must contain more than "labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and a court is not required to accept "legal conclusion[s] couched as a factual allegation," *id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

10

For issues related to corporate identity, courts look to the laws of the state of incorporation to determine whether its corporate identity should be disregarded. Restatement (Second) of Conflict of Laws § 307 (1971); *see also Amoco Chem. Co. v. Tex. Tin Corp.*, 925 F. Supp. 1192, 1201 (S.D. Tex. 1996); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders . . . ."); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008) (determining that under both Texas and Illinois law, the law of the state of incorporation governs veil piercing claims).

1.    **The Complaint Against The Acacia Defendants Should Be Dismissed Because Starkey Fails To Allege The Elements Of An Alter Ego Claim.**

Starkey alleges that Adaptive acts as a mere instrumentality or alter ego of both Defendants Acacia Group and Acacia Corp., and from this Starkey tries to pierce the corporate veil of Adaptive. (DE 1 at ¶ 8.) Starkey also argues that the actions of Acacia Group should be imputed to Acacia Corp. (DE 1 at ¶ 24.) Both Adaptive and Acacia Group are Texas limited liability companies; therefore the law of the Fifth Circuit applies. (DE 1 at ¶ 5.)[2]

---

[2] If this Court finds that Eighth Circuit law or Third Circuit law should apply, based on the state of incorporation of Acacia Corp. or on the law of this Circuit, the result should be the same. The Eighth Circuit, Third Circuit, and Fifth Circuit

Under Fifth Circuit law, a plaintiff alleging alter ego in an attempt to pierce the corporate veil must prove (1) unity between the subsidiary and the parent corporation such that the separateness has ceased; and (2) that holding only the subsidiary liable would promote injustice. *Norfolk S. Ry. Co. v. Trinity Indus. Inc.*, No. 3:07-CV-1905, 2008 U.S. Dist. LEXIS 110274, at *12-13 (N.D. Tex. Sept. 2, 2008); *In re Great S. Life Ins. Co. Sales Practices Litig.*, MDL No. 1214, 1999 U.S. Dist LEXIS 23100, *15-16 (N.D. Tex. Sept. 15, 1999).

> **(a)     The Complaint Should Be Dismissed Because There Is No Unity Between The Acacia Defendants And Adaptive.**

Alter ego is proven by looking at the total dealings of the parent and subsidiary corporation. *See, e.g., In re Great S. Life Ins. Co. Sales Practices Litig.*, 1999 U.S. Dist. LEXIS 23100, at *16 (citing *Castleberry v. Branscum*, 721 S.W.2d

---

largely apply the same legal standard to alter ego allegations. Under Third Circuit law, a plaintiff alleging alter ego in an attempt to pierce the corporate veil must prove fraud or a similar injustice. *See e.g. Gadsen v. Home Pres. Co.*, No. 18888, 2004 Del. Ch. LEXIS 14, *12-13 (Del. Ch. Feb. 20, 2004) ("A court of equity will disregard the separate legal existence of a corporation where it is shown that the corporate form has been used to perpetuate a fraud or similar injustice."); *Boston Scientific Corp. v. Wall Cardiovascular Tech. LLC,* 647 F. Supp., 2d 358, 366-67 (D. Del. 2009) (alter ego theory applies where plaintiff shows some fraud, injustice or inequity in the use of the corporate form). Similarly, under Eighth Circuit law, the corporate veil is only pierced in exceptional circumstances where to do so is necessary to prevent injustice or fraud. *See, e.g., United States v. Martin*, 337 F.2d 171, 175 (8th Cir. 1964) ("The corporate entity will be disregarded only under exceptional circumstances such as where the corporation serves no legitimate business purpose and is used only as an intermediary to perpetrate fraud or promote injustice."); *Nat'l Bond Fin. Co. v. Gen. Motors Corp., 238 F. Supp.* 248, 255 (W.D. Mo. 1964), *aff'd*, 341 F.2d 1022 (8th Cir. 1965).

270, 272 (Tex. 1986)).  Even if accepted as true, Starkey's allegations are not sufficient to support a claim for alter ego.

For instance, Starkey alleges that Adaptive is wholly owned by Acacia Group.  (DE 1 ¶ 25).  However, the court in *Norfolk S. Ry. Co. v. Trinity Indus. Inc.,* No. 3:07-CV-1905, 2008 U.S. Dist. LEXIS 110274 (N.D. Tex. Sept. 2, 2008), found that alleging that the parent owns and operates the subsidiary is insufficient to survive a motion to dismiss.  *Id.* at *12-13, 17.  Indeed, a parent-subsidiary relationship is simply the necessary precursor to begin examining the elements of the alter ego doctrine.

Starkey also alleges that four officers of Adaptive are also officers of Acacia Group and/or Acacia Corp.  (DE 1 ¶ 29).  However, it is well-settled that a duplication of some or even ***all*** of the directors or officers of a corporation is not sufficient to establish alter ego liability.  *United States v. Best Foods*, 524 U.S. 51, 62 (1998).  "[A] subsidiary corporation will not be regarded as the alter ego of its parent corporation 'merely because of . . . a duplication of some or all of the directors or officers. . . .'"  *Norfolk*, 2008 U.S. Dist. LEXIS 110274 at *14 (granting 12(b)(6) motion to dismiss because Plaintiffs' allegations that parent "owns and operates" the subsidiary were not sufficient to pierce the corporate veil).

Starkey further alleges that Acacia Group is the alter ego of Adaptive because they share the same office address.  (DE 1 ¶ 25.)  However, this too is

13

insufficient to establish an alter ego relationship.  Separate legal entities may share the same address.  *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 788-89 (N.D. Tex. 2008) (granting 12(b)(6) motion to dismiss as to alter ego claim where parent corporation and subsidiary corporation had same business address and common ownership); *see also MMI, Inc v. Baja, Inc*., 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010) (finding that sharing the same address is insufficient to establish an alter ego relationship).[3]

Starkey's allegations, even if true, are inadequate to prove unity between the Acacia Defendants and Adaptive.[4]  Starkey's allegations therefore fail to establish a valid alter ego claim.  As such, the Acacia Defendants' motion to dismiss under 12(b)(6) should be granted.

        **(b)**     **The Complaint Should Be Dismissed Because Starkey Has Not Pled Fraud Or Injustice.**

Starkey also fails to plead the "fraud or injustice" element of the alter ego claim.  Indeed, the complaint is silent as to what injustice Starkey will face if the

---

[3] Starkey will likely cite *Cognex Corp. v. VData LLC*, 2006 U.S. Dist. LEXIS 81242 (D. Minn. Sept. 13, 2006) in its opposition brief.  In that case Cognex brought a declaratory judgment suit against VData, Acacia's subsidiary and Acacia Research Corporation.  Under different factual circumstances, the court obtained personal jurisdiction over Acacia based on the alter ego theory.  However, the entities and arguments raised by the present motion are different and were not addressed by the *Cognex* case.

[4] Starkey also alleges that Acacia Corp. speaks for Adaptive through press releases.  (DE 1, Ex. L.)  However, as that press release shows, Acacia Corp. clearly describes Adaptive as a separate entity.

14

corporate veil is not pierced.  Starkey makes only one mention of fraud or injustice in the complaint when it states:  "The three companies are indistinguishable and, as such, the actions of Defendants Adaptive Sonics should be imputed to Defendants Acacia Group and Acacia Corp., and the actions of Defendant Acacia Group should be imputed to Defendant Acacia Corp. where necessary to prevent fraud or injustice."  (DE 1 ¶ 24.)  Such a statement cannot support an alter ego allegation. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft*, 556 U.S. at 679.  Starkey does not provide any factual allegations to support its claim of fraud and injustice.

The failure to plead the necessary facts in support of its claim is fatal to Starkey's alter ego allegations.  In *Capital Parks Inc. v. Se. Ad & Sales Sys., Inc.,* 30 F.3d 627, 630 (5th Cir. 1994), the court affirmed the grant of defendant's 12(b)(6) motion to dismiss because the complaint contained no allegations that the shareholders created the subsidiary to fraudulently avoid liabilities.  *Id.* at 630.

Similarly, in *Boston Scientific Corp. v. Wall Cardiovascular Tech*., 647 F. Supp. 2d 358 (D. Del. 2009), the court held that plaintiffs' allegations of fraud were insufficient to support an alter ego claim.  *Id.* at 367.  Boston Scientific filed a declaratory judgment suit for non-infringement and invalidity against a parent corporation and a subsidiary that owned the patent in suit.  *Id.* at 360.  Defendants brought a motion to dismiss for lack of subject matter jurisdiction based on the fact

15

that the parent corporation did not own the patent in suit. *Id*. at 360-61. The court granted defendants' motion to dismiss, finding that the parent was not the alter ego of the subsidiary. *Id*. at 369. Plaintiffs argued that the parent was the alter ego because the parent and subsidiary shared common directors, that the parent controlled the subsidiary, and that the subsidiary was created to forum shop in Texas. *Id*. at 367. As to the fraud element, Plaintiffs argued that the subsidiary was created as a "sham" company to engage in forum shopping. *Id*. The court rejected each of these arguments, stating that the "plaintiffs [did not] show fraud, injustice, or inequity in the use of the corporate form." *Id*.

Here, as in *Boston Scientific*, Starkey has pled only a conclusory fraud or injustice allegation, without pleading any actual facts that could support a finding of fraud or injustice. Accordingly, the Acacia Defendants' motion to dismiss pursuant to 12(b)(6) should be granted.

### 2. Even If Starkey Had Adequately Pled Alter Ego, The Complaint Still Would Fail Because The Acacia Defendants Could Not Bring A Patent Infringement Suit Based Upon A "Reverse Piercing" Theory.

Even if Starkey had adequately pled its allegations of alter ego, the complaint against the Acacia Defendants should still be dismissed. A parent company cannot bring a suit for patent infringement by virtue of an alter ego relationship with its patent-holding subsidiary (*i.e.,* a theory of reverse piercing of

the corporate veil).  Therefore, a parent cannot be a proper defendant in a patent infringement declaratory judgment suit, even if it is the alter ego of its subsidiary.

For example, in *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009), the court rejected the corporate parent's attempt to disregard its subsidiary's corporate form in order to establish a claim in its own name.  *Id.* at 1188-89.  Similarly, in *Disenos Artisticos, E Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d 377 (9th Cir. 1996), the court stated that "[g]enerally, the corporate veil can be pierced only by an adversary of the corporation, not by the corporation itself for its own benefit."  *Id.* at 380; *see also In re RCS Eng'rd Prods. Co., Inc.,* 102 F.3d 223, 226 (6th Cir. 1996) ("The general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders."); *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987) (noting that piercing the corporate veil is designed to protect the rights of third party creditors, not the rights of the corporation itself); *Carey v. Nat'l Oil Corp.*, 592 F.2d 673, 676 (2d Cir. 1979) (disallowing a parent corporation to create a subsidiary corporation and then ignore the separate corporate existence of that subsidiary whenever it would be advantageous to the parent).

Here, because the Acacia Defendants would not be permitted to pierce the corporate veil for their own benefit, *i.e.* to bring a patent infringement suit against

Starkey, the Acacia Defendants are not a proper defendant for a declaratory judgment of non-infringement.  Therefore, even if Plaintiff adequately pleaded that the Acacia Defendants were alter egos of Adaptive, Plaintiff's claims still would fail.

## IV.    CONCLUSION

Based on the foregoing, the Acacia Defendants respectfully request that its motion to dismiss should be granted pursuant to either 12(b)(1) or 12(b)(6).

18

Dated:  September 10, 2012          Respectfully submitted,

**FREDRIKSON & BYRON, P.A.**


  /s/ Laura L. Myers
Lora M. Friedemann
lfriedemann@fredlaw.com
Laura L. Myers
lmyers@fredlaw.com
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402-1425
Telephone: (612) 492-7000
Facsimile: (612) 492-7077

**STRADLING YOCCA CARLSON &
RAUTH, P.C.**
Marc J. Schneider
mschneider@sycr.com
Sarah Brooks
sbrooks@sycr.com
Aaron C. Humes
ahumes@sycr.com
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: +1 (949) 725-4000
Facsimile: +1 (949) 725-4100

*Attorneys for Defendants*
ACACIA RESEARCH CORPORATION
and ACACIA RESEARCH GROUP

19